ISMAIL J. RAMSEY (CABN 189820)
United States Attorney

THOMAS A. COLTHURST (CABN 99493)
Chief, Criminal Division

CHARLES F. BISESTO (CABN 271353)
Assistant United States Attorney

    450 Golden Gate Avenue, Box 36055
    San Francisco, California 94102-3495
    Telephone: (415) 436-6405
    Fax: (415) 436-6405
    Charles.Bisesto@usdoj.gov

Attorneys for United States of America

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> MICHAEL TATUM, <br><br> Defendant. | CASE NO. 22-245 JSW <br><br> **MEMORANDUM IN SUPPORT OF UNITED STATES' MOTION FOR DETENTION** <br><br> Date: April 6, 2023 <br> Time: 10:30 a.m. <br> Court: Hon. Donna M. Ryu |

### I. INTRODUCTION

On June 28, 2022, a federal grand jury in the Northern District of California returned a one-count Indictment charging the defendant, Michael Tatum, with (i) one count of being a felon in possession of a firearm and ammunition, in violation of 18 U.S.C. § 922(g)(1). *See* Dkt. 1. The Indictment stems from a search warrant conducted at the defendant's home in El Sobrante, California on February 3, 2022. That search was initiated as a result of the California Highway Patrol's Investigation into a handful of stolen cars tied to the defendant and his wife. During the search, officers found five firearms, pounds of marijuana and what appeared to be a marijuana sales operation being run out of the defendant's home.

At the time of the search, the defendant had multiple prior felony convictions out of California

state court. These convictions included illegal possession of a firearm, assault with a firearm and robbery.

After the Indictment was issued by the grand jury in June of 2022, agents with Homeland Security Investigations attempted to find and apprehend the defendant without success. The defendant was ultimately found during a traffic stop in Cleburne County, Alabama on February 25, 2023. The defendant was determined to be a passenger in a van that was stopped for improper lane usage. Inside the car, sheriff deputies found five handguns and an AR-15 rifle. The defendant was placed under arrest for his federal arrest warrant.

On Monday, February 27, 2023, the defendant made his initial appearance in the Northern District of Alabama. *See* Dkt. 4. At that time, the defendant waived a detention hearing and agreed to be transferred to the Northern District of California. *Id*.

On Monday, April 3, 2023, the defendant made his initial appearance in the Northern District of California. *See* Dkt. 5. At that time, he was advised of the charges in the Indictment and the potential punishment that applies. The government moved for detention pursuant to the provisions of 18 U.S.C. § 3142(f)(1)(E). The matter was set for a detention hearing on April 6, 2023.

In what follows, the government discusses the extent of the defendant's criminal history, and the seriousness of the charged conduct. What should be most disturbing to this Court when determining detention is the defendant's willingness to arm his home with multiple firearms, in the immediate vicinity of his young children, despite his serious criminal history involving the use of firearms. For those reasons, to safeguard his appearance in court and to ensure the safety of the community, the government respectfully requests that the defendant be detained pending trial.

## II.   FACTUAL BACKGROUND

**Initial Investigation:**

From December 2020 until February of 2022, officers with the California Highway Patrol (CHP) investigated the defendant and his wife for their potential involvement in the acquisition of stolen vehicles. Multiple cars registered in the defendant's name and his wife's name were determined to have fraudulent VIN labels. These cars were ultimately determined to be stolen cars from various locations in the United States. In December of 2021, officers secured a search warrant to search a Mercedes GLC

300 that the defendant's wife had been seen driving. That car was searched on December 15, 2021. Inside the car, officers found evidence that the VIN number on the Mercedes had been switched. Officers also found a bill of lading for the Mercedes showing that it had been shipped to the defendant at 5416 Valley View Road in El Sobrante, California.

Officers eventually conducted surveillance on the defendant's suspected residence on Valley View Road in El Sobrante, California. During this surveillance, officers observed the defendant and his wife coming and going from this home on multiple occasions. Vehicles parked outside of the residence were also determined to be registered in the defendant's home.

Officers eventually applied for a search warrant from an Alameda County judge in February of 2022. The warrant requested permission to search the defendant's home for evidence of his activities acquiring and storing stolen vehicles. That warrant was approved on February 2, 2022.

On February 3, 2022, officers executed the search warrant at the defendant's home. The house was unoccupied at the time of the search. Upon entry, the investigators were immediately overcome with a strong odor of marijuana. The investigators observed garbage bags filled with marijuana throughout the house. Evidence was located in plain view that also led CHP Investigator Ratto to author a piggyback search warrant to extend the scope of the search to include firearms, drugs and US currency. That piggyback search warrant was approved on February 3, 2022.

During the search, officers also noticed photographs of the defendant and his family on the walls of the home and inside bedroom dressers. Additionally, paperwork in the defendant's name was found throughout the home. In sum, the investigation and the initial findings during this search established that this residence in El Sobrante was the defendant's family home.

**Search of the Master Bedroom:**

The investigators started by searching the master bedroom of the home. This bedroom appeared to be occupied and used by the defendant and his wife. The room contained a large bed with dressers flanking both sides. CHP Investigator Ratto searched the dresser on the left side of the bed (left being the position of the dresser as you look towards the headboard from the foot of the bed). Inside the top dresser drawer, Investigator Ratto saw two (2) Glock firearms. One of the guns had a visible extended magazine affixed. Also inside the dresser was a substantial amount of US currency. The first gun was

UNITED STATES' DETENTION MEMORANDUM    3
22-245 JSW

determined to be a 9mm, Glock 17 with serial number DHC342. That firearm had no record on file. That firearm was loaded with an extended magazine capable of holding 17 rounds.

The second firearm was determined to be a 9mm, Glock 19 with serial number BBKW736. That firearm was loaded with an extended magazine capable of holding 31 rounds. That firearm was determined to be stolen out of Houston. The dresser was filled with all male clothing. Inside the dresser, the investigator also found multiple fraudulent California Driver's Licenses with pictures of the defendant and his wife. They also found several pieces of mail addressed to the defendant and his wife.

Inside the master bedroom, Investigator Ratto located an additional Glock pistol case with serial number FPE313, which returned with no record. In both bedside tables in the master bedroom, investigators located US currency crumpled up and filled in the top drawers. On one dresser, a piece of paper with names, birth dates, and social security numbers was located, as well as a Burberry box with US currency and a plastic shopping bag with US currency. Two black and silver safes were located in the master bedroom closet. Inside one safe was US currency. Inside the other safe, investigators found two Ruger 5.7x28mm magazines and 5.7x288 ammunition. Finally, two US Postal money orders totaling $1,000 each were located on the right bedside table. In total, $47,226.05 was located in the master bedroom.

**Search of the Second Bedroom:**

A second unused bedroom was located by CHP during the search. In that second bedroom, investigators found a Uline plastic wrapping machine, bags filled with marijuana, a safe with boxes of .40 caliber ammunition, .45 caliber ammunition, and 5.7x28mm ammunition, and an additional Glock case with a separate serial number (BEBA146) that returned no record. Investigators also found a Palmetto State AR-style pistol, with serial number KSF2013743, which also returned no record. That firearm was located on a shelf in the closet. Because of its size, that firearm could be seen from anyone entering the closet area of the bedroom. The investigators also found an Anderson Arms AR-style pistol, serial number 21122832, inside the closet. Much like the Palmetto AR-style pistol, the Anderson Arms pistol was large and returned no record. Finally, inside the second bedroom the investigators located two shoe boxes with US currency inside. A total of $2,968 was located in the second bedroom.

**Search of the Children's Bedroom:**

Investigators searched a third bedroom which appeared to be for children as there were several children's toys, small bunk beds, and children's clothing. Photographs and surveillance further indicated the defendant and his wife had multiple children that resided with them at the home in El Sobrante. Investigators located a plastic bag filled with 7.62x39mm ammunition in the children's bedroom closet, a bag filled with 45 bottles of alprazolam, and several bags of marijuana.

**Search of Downstairs Area:**

Investigators located loose US Currency on the kitchen countertop totaling $326. Investigators located several shipping boxes in the living room. Inside the boxes Investigators located regular household items including a "Bluey" puzzle box that appeared to be factory sealed. Investigators opened the box and found US Currency totaling $14,300. Investigators also opened a package filled with diapers and children's toys. Inside the package, investigators located US Currency placed inside the diapers totaling $14,710. Investigators located a box with Kleenex boxes containing US Currency placed in between the sheets of tissues totaling $33,000. Investigators located a box filled with five Lay Stax chips bottles. Inside the chip bottles officers found US currency totaling $19,625. Investigators located a Gain Box in the laundry room containing US Currency totaling $4,000. Investigators located a Softwork Box containing $188. And, an additional $9,288 was located throughout the kitchen.

On top of the kitchen refrigerator inside a basket, Investigators located a Smith & Wesson Shield 9mm serial number JEX1654 which returned with no record. The firearm was loaded with one round in the chamber. Three bottles of Honey Oil (THC Extract) were located in the Kitchen. In addition, 17 US Postal Money orders were located in a basket on the kitchen counter.

**Evidence of Marijuana Sales Activity:**

Throughout the home, but primarily in the downstairs common areas, the investigators found over 1,000 pounds of marijuana inside 7 boxes, 53 Hefty garbage bags and 2 duffle bags. Additionally, the investigators found the following evidence of marijuana sales activity inside the home:

1. There was narcotics packaging material located in the residence.
2. $148,531 in US Currency was located throughout the residence.
3. Money was located in shipping packages.

    4.  Vacuum sealed bags and saran wrapping paper and machines were located in the house.

    5.  Money orders were found in the master bedroom and kitchen.

Investigators ran both the defendant and his wife through the California Department of Cannabis Control and neither were licensed to sell, produce, or transport cannabis products in the State of California.

**Basis for the Indictment:**

In total, five separate firearms were found inside the home:

1. Glock 19, 9mm (Serial number BBKW736)- found in the master bedroom.
2. Glock 17, 9mm (Serial number DHC342)- found in the master bedroom.
3. Palmetto State AR-style Pistol (serial number KSG2013743)- found in second bedroom.
4. Anderson Arms AR-Style pistol (Serial number 21122832)- found in second bedroom.
5. Smith & Wesson Shield 9mm (Serial number JEX1654)- found on top of the refrigerator inside a basket.

All five of the guns were loaded. The Glock 19 and the Glock 17 were loaded with high-capacity magazines. The Glock 17 was determined to be stolen out of Houston, Texas. In the criminal Indictment, the defendant is charged with possessing each of these firearms.

## III.   LEGAL STANDARD

Under the Bail Reform Act of 1984, the Court must detain a defendant before trial without bail where "the judicial officer finds that no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person in the community." 18 U.S.C. § 3142(e)(1). Detention is appropriate where a defendant is either a danger to the community or a flight risk; the government need not prove that both factors are present. *United States v. Motamedi*, 767 F.2d 1403, 1406 (9th Cir. 1985). A finding that a defendant is a danger to the community must be supported by clear and convincing evidence, but a finding that a defendant is a flight risk need only be supported by a preponderance of the evidence. *Id.*

"[T]he Bail Reform Act mandates an individualized evaluation guided by the factors articulated in [18 U.S.C.] § 3142(g)." *United States v. Diaz-Hernandez*, 943 F.3d 1196, 1199 (9th Cir. 2019). Those factors are: (i) the nature and circumstances of the offense charged; (ii) the weight of the evidence against the defendant; (iii) the history and characteristics of the defendant, including the defendant's

character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings, as well as whether the crime was committed while the defendant was on probation or parole; and (iv) the nature and seriousness of the danger to any person or to the community that would be posed by the defendant's release. *See* 18 U.S.C. § 3142(g); *United States v. Winsor*, 785 F.2d 755, 757 (9th Cir. 1986).

## IV.   ARGUMENT

### A.   The Defendant Is a Danger to the Community

#### 1.   Nature and Circumstances of the Offense Demonstrate the Defendant Is a Danger

The nature and circumstances of the defendant's conduct demonstrate he is a danger to the community who is unwilling to abide by conditions that might mitigate the risk he poses. The facts of this offense, alone, should provide the Court enough reason to detain him pending trial. This investigation led to law enforcement finding five loaded firearms in the defendant's home, two of which were found with extended magazines inside a dresser right next to his bed. Additionally, the officers found over 1000 pounds of marijuana, marijuana packaging materials, almost $150,000 in cash, money orders, and vacuum sealed bags and machines. Collectively, these items—the guns, drugs, cash, and packaging materials—are the hallmarks of a large-scale drug dealing operation.

Most relevant to this Court's determination, these dangerous activities were being conducted out of a family home where the defendant resided with his young children. All of the firearms were unsecured and easily accessible to any occupant in the home, including the young children. Additionally, the defendant, as the apparent head of this household, was a convicted felon prohibited from possessing firearms. Despite his restriction, the defendant armed his home with five separate loaded guns. Very clearly, the defendant posed a danger to his children and society at large at the time of the search in this case. And, given his willingness to blatantly disobey his requirement to not possess firearms, the defendant would be an ongoing danger to the community if released.

#### 2.   The Weight of the Evidence Against the Defendant is Overwhelming

There is overwhelming evidence in support of the one-count Indictment. The defendant demonstrated clear dominion and control over the residence in El Sobrante where all of the firearms in question were located. First, surveillance showed the defendant coming to and from the home on

multiple occasions, with his family, in the days leading up to the search. Second, photographs on the wall in the home very clearly identified this home as the defendant's family home.

Furthermore, the location of the firearms in question indicate the defendant had knowledge and possession of those guns. Two of the firearms in question were recovered in a dresser that appeared to be used by the defendant as they contained photos and indicia in the defendant's name and men's clothing. Separately, the two rifles that were recovered were found on the shelf of a closet in an unused bedroom. Because of their size, these rifles were quite visible to anyone who entered. Additionally, male clothing was seen in this closet, suggesting the defendant used it as his own. Finally, the fifth firearm was found loaded, on top of a laundry basket in the kitchen, a common area of the home.

Given all of these facts, there is strong evidence supporting the sole count of 18 U.S.C. 922(g)(1) charged in the Indictment. As a result, this factor should weigh in favor of keeping the defendant detained pending trial on this matter.

### 3. The Defendant's History and Characteristics Reveal His Dangerousness

The defendant has an extensive criminal record including convictions for crimes of violence. Specifically, the defendant was convicted in 2013 for a violation of California Penal Code § 245(b), assault with a firearm. This charge has been determined to be a crime of violence as it is defined in the United States Sentencing Guidelines. *See United States v. Grajeda* (9th Cir. 2009) 581 F.3d 1186, 1189 and *United States v. Heron-Salinas* (9th Cir. 2009) 566 F.3d 898, 899. Additionally, the defendant was convicted of violating California Penal Code § 211, robbery, in 2011. The crime of robbery has also been determined to constitute a crime of violence under the United States Sentencing Guidelines. *See United States v. Flores-Mejia* (9th Cir. 2012) 687 F.3d 1213, 1214.

Admittedly, the defendant's most recent conviction occurred around nine years before the charged conduct in the instant case. Nevertheless, the defendant spent five years in the California Department of Correction for his 2013 conviction. More to the point, at the time the search warrant was executed in this case, the defendant was a convicted felon with multiple prior offenses involving firearms. In fact, in addition to his 2013 assault with a firearm offense, the defendant was also convicted in 2009 of carrying a concealed firearm in his car (a violation of former California Penal Code § 12025(a)(1)). Despite multiple convictions for illegally possessing weapons, the defendant made a

choice to stock his home with guns and ammunition, demonstrating no respect for the law or the conditions of his status as a convicted felon. And, as noted above, the defendant made a choice to store these dangerous weapons in the presence of his young children. This risky behavior highlights the danger the defendant poses to the community.

**B.      The Defendant Presents a Significant Flight Risk**

Throughout his criminal history, the defendant has demonstrated a willingness to evade judicially imposed orders. In 2009, he was convicted of possessing a concealed gun in his car. While on probation for that offense, the defendant was arrested for being in receipt of stolen property (a violation of California Penal Code § 496(a)). The defendant pled guilty to the PC § 496(a) charge on July 1, 2009 and was again placed on felony probation. While on probation a second time, the defendant was arrested for his involvement in a series of robberies in Alameda County. He ultimately pled guilty to a robbery charge in 2011. The defendant was again placed on a grant of probation.

Then, in 2012, despite being on a third grant of probation in less than two years, the defendant was arrested for attempted robbery and assault with a firearm. He was ultimately convicted of assault with a firearm (a violation of California Penal Code § 245(b)) for this offense and his robbery probation was revoked. The defendant was subsequently sentenced to five years in state prison for that probation violation.

Although these convictions are somewhat remote in time, the defendant's inability to follow the law and abide by the terms of his release and probation should give this Court pause when determining whether he is suitable for release in the instant case. It appears from his record that the defendant struggles to follow judicially imposed orders. That is most obvious through the facts of the instant case where the defendant, despite being a convicted felon who is restricted from possessing weapons, has not only armed himself, but has armed himself with multiple firearms, firearms with high-capacity magazines and ammunition.

The defendant also faces a significant sentence should he be convicted. Based on the government's calculations, the defendant faces a Guidelines' range of 121-151 months' imprisonment based on Total Offense Level 29 (after acceptance of responsibility) [1] and Criminal History Category

---

[1] Because the offense involved a semiautomatic firearm that is capable of accepting a large

IV[2]. This means the defendant is likely to receive a sentence close to the statutory maximum sentence of ten years if convicted.

At a minimum, the defendant's criminal history shows that he cannot be trusted to obey court orders. But in consideration of all the circumstances—including the strong evidence against him, the potentially significant sentence he faces if convicted, and his demonstrated failure to comply with court supervision—there is a substantial risk that the defendant will refuse to abide by any court-ordered conditions of release and flee.

## V. CONCLUSION

There are no set of conditions that will reasonably assure the appearance of the defendant at court proceedings or ensure the safety of the community. The Court should order the defendant detained pending trial.

DATED: April 5, 2023

Respectfully submitted,

ISMAIL J. RAMSEY
United States Attorney

 /s/ Charles F. Bisesto
CHARLES F. BISESTO
Assistant United States Attorney

---

capacity magazine and Tatum has a prior felony conviction for a "crime of violence", the offense base level is 22 under §2K2.1(a)(3). Under §2K2.1(b)(6)(B), because Tatum used the firearm in conjunction with the possession of marijuana for sales purposes, the offense level is increased by 4 levels. Additionally, one of the firearms was stolen which, under §2K2.1(b)(6)(4) adds 4 points. Finally, Tatum possessed 5 firearms in total which, under §2K2.1(b)(6)(1) adds 2 more points.

[2] The defendant has two prior prison commitments convictions (2011 violation of Cal. PC § 211 for which he received 5 years in prison and 2009 violation of Cal. PC § 496(a) for which he received 2 years in state prison). Under U.S.S.G. §4A1.1(a), he would receive 3 points for each of these convictions. The defendant also has a 2013 conviction for a violation of Cal. PC § 245(b) for which he was sentenced to probation. This conviction adds 1 point under U.S.S.G. §4A1.1(c). In total, the defendant has 7 criminal history points for these conviction taking him to a CHC IV.

UNITED STATES' DETENTION MEMORANDUM   10
22-245 JSW